**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bradley D. Proctor, | No. CV 11-0754-PHX-RCB (DKD) |
| Plaintiff, | **ORDER** |
| vs. | |
| Corrections Corp. of America, et al., | |
| Defendants. | |

Plaintiff Bradley D. Proctor, an Alaskan inmate who is now confined in the Hudson Correctional Facility (HCF), a GEO Group, Inc., facility in Hudson, Colorado,[1] filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 in Alaska state court. (Doc. 12-4.)[2] On March 17, 2011, Defendant Corrections Corporation of America (CCA) removed this action from Alaska state court to the United States District Court for the District of Alaska based on federal question and diversity subject matter jurisdiction. (Doc. 12-3.) In an Order filed April 14, 2011, the District of Alaska transferred this action to this District based on venue.[3] (Doc. 12-1.) CCA has filed a motion for attorney substitution, which will be

---

[1] See http://www.thegeogroupinc.com/facility.asp?fid=153 (Last visited Apr. 25, 2011).

[2] "Doc." refers to the docket number of filings in this case.

[3] On March 23, 2011, CCA filed an Answer in the District of Alaska; however, the Answer has not been filed in this Court.

**TERMPSREF**

1  granted. (Doc. 18.) Plaintiff filed a motion for extension of time to seek remand of this case
2  to Alaska state court, which has been superceded by an amended motion for extension of
3  time, to which Defendant CCA has responded. (Docs. 19-21.) Plaintiff has not filed a reply.
4  Plaintiff's motion will be denied. The Court will order Defendants Cox, Crane, and Miracle
5  to answer the Complaint and will dismiss the remaining claims and Defendants without
6  prejudice.

7  **I.      Removal to Federal Court was Proper**

8  Plaintiff seeks an extension of time to file a motion for remand contending that
9  removal of his state law claims was improper. (Docs. 19, 20.) A defendant may remove any
10 civil action brought in state court over which the federal court would have original
11 jurisdiction. 28 U.S.C. § 1441(a). That is, a civil action that could have originally been
12 brought in federal court may be removed from state to federal court. Caterpillar Inc. v.
13 Williams, 482 U.S. 386, 392 (1987). A federal court has original jurisdiction "of all civil
14 actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §
15 1331. Plaintiff alleges a federal constitutional violation in his Complaint pursuant to 42
16 U.S.C. § 1983, thus, subject matter jurisdiction is proper in federal court. Further, a federal
17 court may exercise supplemental jurisdiction over closely related state law claims. See 28
18 U.S.C. § 1367(c).

19 Plaintiff filed his Complaint in Alaska state court on December 7, 2010. A copy of
20 the Complaint and summons was received by CCA's statutory agent on February 25, 2011,
21 and CCA removed the case to federal court on March 17, 2011. (Doc. 12-3, 12-5.) The
22 Complaint in this case facially supports that subject matter jurisdiction exists in federal court
23 because Plaintiff alleges violation of his federal constitutional rights. 28 U.S.C. §§ 1441,
24 1442. Further, Defendant CCA removed the action from state court within 30 days of
25 receiving notice of the filing of this action. 28 U.S.C. § 1446(b). Because the case was
26 properly removed to federal court, Plaintiff's amended motion for extension of time to seek
27 remand will be denied.
28 /     /     /

## II.     Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).

/ / /

### III.    Complaint

Plaintiff's claims concern events that occurred while he was confined in CCA's Red Rock Correctional Center (RRCC) in Eloy, Arizona, pursuant to a contract between the State of Alaska and CCA. Plaintiff arrived at RRCC on November 23, 2008, and is and was a resident of Alaska at relevant times. Plaintiff alleges six state law claims and one federal constitutional claim in his Complaint. Plaintiff sues CCA and the following employees of RRCC: Dr. William Crane; Virginia Cox, Registered Nurse; Lois Miracle, Nurse Practitioner; John Doe Florez; John Doe DeLash; and Jane Doe Alfano. Plaintiff seeks compensatory and punitive relief.

Plaintiff alleges the following facts in his Complaint: When Plaintiff arrived at RRCC, he was 49 years old and weighed between 280 and 300 pounds. Plaintiff arrived at RRCC from Spring Creek Correctional Center,[4] where medical staff had prescribed assignment to a bottom bunk due to previously incurred debilitating injuries to his right ankle and left knee. Upon Plaintiff's arrival at RRCC, Plaintiff informed officials of the bottom bunk assignment, but he was assigned to a top bunk and was told that CCA did not honor out-of-state recommendations for assignment to a bottom bunk. Both Plaintiff's weight and his ankle and knee disabilities made it difficult for him to climb into and out of an upper bunk. In addition, only a "flimsy plastic chair" rather than a ladder was provided to him to climb into an upper bunk. (Doc. 12-4 at 6.)

During the early morning of December 4, 2008, Plaintiff was climbing down in the dark from the top bunk using the plastic chair when the chair gave way and Plaintiff fell head first into the cell's stainless steel sink. The next morning, Plaintiff reported to security staff, who referred him to medical staff. Plaintiff was examined by Nurse Cox, who gave him a 24-hour ice permit. Later that day, Defendant DeLash issued Plaintiff a disciplinary write-up for engaging in mutual combat, although Plaintiff was the only person charged. The next

---

[4] Spring Creek Correctional Center is a prison operated by the State of Alaska. See http://www.correct.state.ak.us/corrections/institutions/sccc/sccc.jsf (last visited May 25, 2011).

1 day, Unit Manager Florez reassigned Plaintiff to a bottom bunk.

2 On December 9, 2008, Dr. Crane memorialized Plaintiff's assignment to a lower bunk in his medical file, but did not see Plaintiff. On December 11, 2008, Plaintiff asked to see medical personnel because he was continuing to suffer from "a pronounced facial disfigurement, numbness, headaches, dizziness, blurred vision, spasms, and pain" resulting from the fall. (Id. at 7.) On December 20, 2008, Nurse Practitioner Miracle saw Plaintiff and noted the pronounced facial disfigurement. She told Plaintiff that they needed to get x-rays, but that x-rays had to be approved by Dr. Crane, which would not happen until after the holidays. Plaintiff was not x-rayed until January 14, 2009, after he filed two written requests for treatment. The x-rays revealed serious trauma to Plaintiff's face and resulted in him being referred for treatment to an outside specialist. Up to that point, Plaintiff had only been prescribed aspirin and had only seen a physician once.

On January 26, 2009, Dr. Afshin examined Plaintiff and determined that he required reconstructive facial surgery. Dr. Afshin told Plaintiff that the surgery would be more complicated and would require re-breaking bones due to the lapse of time since the injury. Dr. Afshin also told Plaintiff that nerve damage might be permanent due to the time that had elapsed. On January 29, 2009, Dr. Afshin performed surgery, including the insertion of titanium plates into the damaged area, at a facility outside of RRCC. Dr. Afshin prescribed post-surgical antibiotics and pain medications for Plaintiff. However, Plaintiff was returned to RRCC without the antibiotics or pain medications. Plaintiff did not begin receiving antibiotics until February 1, 2009. Plaintiff informed medical staff that he was in severe pain, but they refused to dispense the prescribed pain medication. Plaintiff continued to suffer severe pain for about a week as a consequence.

On March 17, 2009, Plaintiff asked about scheduling his follow-up surgery, a septoplasty. An April 18, 2009 response stated that he was approved for septoplasty in the distant future. On May 22, 2009, the septoplasty was performed, which involved the insertion of two shunts in Plaintiff's nostrils that were sewn together inside his nasal passage. Because the procedure was extremely painful, Plaintiff was given morphine and Demoral by

his surgeon during and immediately after the procedure.  The surgeon asked Plaintiff's escorts if it was permissible to prescribe codeine for post-surgical pain and was told that it was.  However, upon Plaintiff's return to RRCC, Defendant Cox changed the prescription to ice several times a day with aspirin.  On May 25, 2009, Plaintiff submitted several written requests concerning pain and discomfort caused by the shunts.  The next day, Plaintiff was seen by Dr. Crane, who refused to override Cox's substitution of ice and aspirin for codeine.  On June 1, 2009, Florez responded to Plaintiff's May 25 written requests by saying that he would speak to "Alfano" in medical.  Because of the continuing pain, Plaintiff asked to have the shunts removed prematurely.  Plaintiff suffers from occasional facial numbness and eye twitching where he was injured.  Since the injury, Plaintiff has also suffered from memory loss, impaired cognitive function, and bouts of anxiety and depression.

### III.    Failure to State a Claim Under § 1983

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989).  In addition, to state a valid constitutional claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

Plaintiff alleges that Defendants violated his Eighth Amendment right to medical care. Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096 (quotations omitted).

1  "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. Farmer, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." Clement v. California Dep't of Corrections, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105.

**A.  CCA**

Plaintiff sues CCA, a private corporation for violation of federal rights. Claims under § 1983 may be directed at "bodies politic and corporate." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 686, 688-89 (1978). Under the Civil Rights Act of 1871, Congress intended municipal corporations and other local government units to be included among those persons to whom § 1983 applies. Id. at 2035. That proposition has been extended to

1  corporations that act under color of state law.  See Sable Commc'ns of Cal. Inc. v. Pacific
2  Tel. & Tel Co., 890 F.2d 184, 189 (9th Cir. 1989) (willful joint participation of private
3  corporation in joint activity with state or its agent taken under color of state law).

4    There are four ways to find state action by a private entity for purposes of § 1983: (1)
5  the private actor performs a public function, (2) the private actor engages in joint activity
6  with a state actor, (3) a private actor is subject to governmental compulsion or coercion, or
7  (4) there is a governmental nexus with the private actor.  Kirtley v. Rainey, 326 F.3d 1088,
8  1093 (9th Cir. 2003).  Under the public function test, "the function [performed by the private
9  actor] must traditionally be the exclusive prerogative of the state."  Parks Sch. of Bus., Inc.
10 v. Symington, 51 F.3d 1480, 1486 (9th Cir. 1995); see Kirtley, 326 F.3d at 1093; Lee v. Katz,
11 276 F.3d 550, 554-555 (9th Cir. 2002).  A privately owned corporation that operates prisons
12 pursuant to a contract with a state performs a public function that is traditionally the
13 exclusive prerogative of the state.  Further, to state a claim under § 1983 against a private
14 entity performing a traditional public function, a plaintiff must allege facts to support that his
15 constitutional rights were violated as a result of a policy, decision, or custom promulgated
16 or endorsed by the private entity.  See Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997);
17 Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Wall v. Dion, 257 F.
18 Supp.2d 316, 319 (D. Me 2003); see also Austin v. Paramount Parks, Inc., 195 F.3d 715, 727
19 (4th Cir. 1999); Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990);
20 Lux by Lux v. Hansen, 886 F.2d 1064, 1067 (8th Cir. 1989); Iskander v. Village of Forest
21 Park, 690 F.2d 126, 128 (7th Cir. 1982).

22   CCA performs a traditional public function, i.e., operating a prison.  However,
23 Plaintiff fails to allege facts to support that CCA promulgated or endorsed a policy or custom
24 that resulted in the alleged violation of Plaintiff's federal rights.  Plaintiff does not allege
25 specific facts against CCA to support that it promulgated or endorsed a policy or custom that
26 resulted in a violation of his federal rights.  Plaintiff instead appears to predicate liability
27 solely on *respondeat superior*.  There is no *respondeat superior* liability under § 1983, so a
28 defendant's position as the employer of someone who allegedly violated a plaintiff's

1 constitutional rights does not make it liable. Monell, 436 U.S. at 691; Taylor, 880 F.2d at 1045. Because Plaintiff fails to state a federal claim against CCA under § 1983, his federal claim against it will be dismissed.

### B.     Florez, Alfano, and DeLash

Plaintiff sues three CCA employees, DeLash, Florez, and Alfano. The only facts alleged against DeLash is that he issued Plaintiff a disciplinary charge the day after Plaintiff was injured. The only facts alleged against Florez is that he reassigned Plaintiff to a lower bunk the day after Plaintiff fell and responded to Plaintiff's written requests on May 25, 2009 regarding the pain he was suffering following the septoplasty. The only mention of Alfano is Florez's statement in his June 1, 2009 response to Plaintiff that he would check with Alfano about Plaintiff's May 25, 2009 requests.

None of these facts is sufficient to state a claim against these Defendants for violation of Plaintiff's constitutional rights to medical care. While Plaintiff adequately alleges that he had a serious medical need following his fall and in connection with the subsequent surgeries, he fails to allege facts to support that any of these Defendants acted with deliberate indifference to his serious medical needs. Accordingly, these Defendants will be dismissed.

## V.     Claims for Which an Answer Will be Required

Plaintiff sufficiently alleges that Defendants Cox, Miracle, and Crane acted with deliberate indifference to his serious medical needs. While Cox's alleged initial failure to recognize the seriousness of Plaintiff's injury amounts to no more than negligence, Plaintiff sufficiently alleges that her refusal to provide him prescribed pain medication after his surgeries, despite his repeated requests due to pain, sufficiently states an Eighth Amendment violation. Plaintiff alleges that Dr. Crane endorsed Cox's substitution of ice and aspirin for prescribed pain medication following a painful procedure and sufficiently alleges that Crane endorsed Cox's substitution of ice and aspirin and that it was medically unacceptable under the circumstances. Plaintiff alleges that despite recognizing that x-rays were needed, Miracle failed to ensure that he was promptly x-rayed, even after the holidays had passed, for two weeks. Accordingly, the Court will require a response from Defendants Cox, Miracle, and

1  Crane to the Complaint.

2  **VI. Warnings**

3      **A. Release**

4  Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. 5 Also, within days of his release, he must either (1) notify the Court that he intends to pay the 6 balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in 7 dismissal of this action.

8      **B. Address Changes**

9  Plaintiff must file and serve a notice of a change of address in accordance with Rule 10 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other 11 relief with a notice of change of address. Failure to comply may result in dismissal of this 12 action.

13      **C. Copies**

14  Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy 15 of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate 16 stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit 17 an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply 18 may result in the filing being stricken without further notice to Plaintiff.

19      **D. Possible Dismissal**

20  If Plaintiff fails to timely comply with every provision of this Order, including these 21 warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 22 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to 23 comply with any order of the Court).

24  **IT IS ORDERED:**

25      (1) Defendant CCA's motion to substitute counsel is **granted**. (Doc. 18.)

26      (2) Plaintiff's amended motion for extension of time to seek remand is **denied**. 27 (Doc. 20.)

28      (3) Defendants CCA, DeLash, Florez, and Alfano, and John or Jane Does are

1  **dismissed** without prejudice.

2  (4) Defendants Cox, Crane, and Miracle must answer the Complaint.

3  (5) The Clerk of Court must send Plaintiff a service packet including the
4  Complaint (Doc. 12-4), this Order, and both summons and request for waiver forms for
5  Defendants Cox, Crane, and Miracle.

6  (6) Plaintiff must complete and return the service packet to the Clerk of Court
7  within 21 days of the date of filing of this Order. The United States Marshal will not provide
8  service of process if Plaintiff fails to comply with this Order.

9  (7) If Plaintiff does not either obtain a waiver of service of the summons or
10 complete service of the Summons and Complaint on a Defendant within 120 days of the
11 filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the
12 action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv
13 16.2(b)(2)(B)(i).

14 (8) The United States Marshal must retain the Summons, a copy of the Complaint,
15 and a copy of this Order for future use.

16 (9) The United States Marshal must notify Defendants of the commencement of
17 this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal
18 Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The**
19 **Marshal must immediately file signed waivers of service of the summons. If a waiver**
20 **of service of summons is returned as undeliverable or is not returned by a Defendant**
21 **within 30 days from the date the request for waiver was sent by the Marshal, the**
22 **Marshal must**:

23 (a) personally serve copies of the Summons, Complaint, and this Order upon
24 Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

25 (b) within 10 days after personal service is effected, file the return of service
26 for Defendant, along with evidence of the attempt to secure a waiver of service of the
27 summons and of the costs subsequently incurred in effecting service upon Defendant.
28 The costs of service must be enumerated on the return of service form (USM-285) and

must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10)  **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11)  Defendant must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12)  Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13)  This matter is referred to Magistrate Judge David K. Duncan pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 13th day of June, 2011.

_____
Robert C. Broomfield
Senior United States District Judge