**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bradley D. Proctor, | No. CV 11-0754-PHX-RCB (DKD) |
| Plaintiff, | **ORDER** |
| vs. | |
| Corrections Corp. of America, et al., | |
| Defendants. | |

    Plaintiff *pro se* Bradley D. Proctor, is an Alaskan inmate, who during the relevant time frame was confined at the Red Rock Detention Center ("RRDC") in Eloy, Arizona, pursuant to a contract between the State of Alaska Department of Corrections ("DOC") and defendant the Corrections Corporation of America ("CCA"). After being granted leave to do so, Plaintiff filed an "Amended Complaint"[1] (Doc. 33). For the reasons set forth herein the Court will order Defendants Cox, Crane, and Miracle to answer certain claims in that FAC, but it will dismiss the remaining claims and Defendants with or without prejudice as it deems appropriate.

---

[1] For the sake of brevity, the court will refer to this amended complaint as the "FAC," *i.e.*, the first amended complaint

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). The court also has a statutory mandate to "identify cognizable claims[.]" 28 U.S.C. § 1915A(b).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally when evaluating them under *Iqbal*." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (footnote omitted). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)). "While

the standard is higher, [this court's] 'obligation' remains, 'where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" See id. (quoting Bretz v. Kelman, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc)). Guided by these principles, this court has carefully screened and examined Plaintiff's FAC.

## II. First Amended Complaint

Plaintiff arrived at RRCC on November 23, 2008, and is and was a resident of Alaska at relevant times. Liberally evaluating the FAC, as it must, the court finds that for the purposes of this screening order only, that complaint can be construed as alleging a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment's proscription against cruel and unusual punishment, made applicable to the States through the Fourteenth Amendment. Plaintiff also alleges state law claims, which, broadly stated, are for breach of contract, negligence, medical malpractice, and intentional infliction of emotional distress. Plaintiff sues CCA and the following employees of RRCC: Dr. William Crane; Virginia Cox, Registered Nurse; Lois Miracle, Nurse Practitioner; John Doe Florez; John Doe DeLash; and Jane Doe Alfano.

Plaintiff alleges the following facts in his FAC: When Plaintiff arrived at RRCC, he was 49 years old and weighed between 280 and 300 pounds. Plaintiff arrived at RRCC from Spring Creek Correctional Center, where medical staff had prescribed assignment to a bottom bunk due to previously incurred debilitating injuries to his right ankle and left knee. Upon Plaintiff's arrival at RRCC, Plaintiff informed officials of the bottom bunk assignment, but he was assigned to a top bunk and was told that CCA did not honor out-of-state recommendations for assignment to a bottom bunk. Both Plaintiff's weight and his ankle and knee disabilities made it difficult for him to climb into and out of an upper bunk. In addition, only a "flimsy plastic chair" rather than a ladder was provided to him to climb into an upper bunk.

During the early morning of December 4, 2008, Plaintiff was climbing down in the dark from the top bunk using the plastic chair when the chair gave way and Plaintiff fell head

first into the cell's stainless steel sink. The next morning, Plaintiff reported to security staff, who referred him to medical staff. Plaintiff was examined by Nurse Cox, who gave him a 24-hour ice permit. Later that day, Defendant DeLash issued Plaintiff a disciplinary write-up for engaging in mutual combat, although Plaintiff was the only person charged. The next day, Unit Manager Florez reassigned Plaintiff to a bottom bunk.

On December 9, 2008, Dr. Crane memorialized Plaintiff's assignment to a lower bunk in his medical file, but did not see Plaintiff. On December 11, 2008, Plaintiff asked to see medical personnel because he was continuing to suffer from "a pronounced facial disfigurement, numbness, headaches, dizziness, blurred vision, spasms, and pain" resulting from the fall. On December 20, 2008, Nurse Practitioner Miracle saw Plaintiff and noted the pronounced facial disfigurement. She told Plaintiff that they needed to get x-rays, but that x-rays had to be approved by Dr. Crane, which would not happen until after the holidays. Plaintiff was not x-rayed until January 14, 2009, after he filed two written requests for treatment. The x-rays revealed serious trauma to Plaintiff's face and resulted in him being referred for treatment to an outside specialist. Up to that point, Plaintiff had only been prescribed aspirin and had only seen a physician once.

On January 26, 2009, Dr. Afshin examined Plaintiff and determined that he required reconstructive facial surgery. Dr. Afshin told Plaintiff that the surgery would be more complicated and would require re-breaking bones due to the lapse of time since the injury. Dr. Afshin also told Plaintiff that nerve damage might be permanent due to the time that had elapsed. On January 29, 2009, Dr. Afshin performed surgery, including the insertion of titanium plates into the damaged area, at a facility outside of RRCC. Dr. Afshin prescribed post-surgical antibiotics and pain medications for Plaintiff. However, Plaintiff was returned to RRCC without the antibiotics or pain medications. Plaintiff did not begin receiving antibiotics until February 1, 2009. Plaintiff informed medical staff that he was in severe pain, but they refused to dispense the prescribed pain medication. Plaintiff continued to suffer severe pain for about a week as a consequence.

On March 17, 2009, Plaintiff asked about scheduling his follow-up surgery, a

septoplasty. An April 18, 2009 response stated that he was approved for septoplasty in the distant future. On May 22, 2009, the septoplasty was performed, which involved the insertion of two shunts in Plaintiff's nostrils that were sewn together inside his nasal passage. Because the procedure was extremely painful, Plaintiff was given morphine and Demoral by his surgeon during and immediately after the procedure. The surgeon asked Plaintiff's escorts if it was permissible to prescribe codeine for post-surgical pain and was told that it was. However, upon Plaintiff's return to RRCC, Defendant Cox changed the prescription to ice several times a day with aspirin. On May 25, 2009, Plaintiff submitted several written requests concerning pain and discomfort caused by the shunts. The next day, Plaintiff was seen by Dr. Crane, who refused to override Cox's substitution of ice and aspirin for codeine. On June 1, 2009, Florez responded to Plaintiff's May 25 written requests by saying that he would speak to "Alfano" in medical. Because of the continuing pain, Plaintiff asked to have the shunts removed prematurely. Plaintiff suffers from occasional facial numbness and eye twitching where he was injured. Since the injury, Plaintiff has also suffered from memory loss, impaired cognitive function, and bouts of anxiety and depression. Plaintiff is seeking compensatory and punitive[2] damages.

**III.     42 U.S.C. § 1983**

To state a claim under § 1983, as plaintiff Proctor is attempting to do, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). In addition, to state a valid constitutional claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

Plaintiff alleges that Defendants provided negligent medical care. Not every claim by

---

[2] Although Plaintiff specifically alleges a separate cause of action for punitive damages, the Court construes it as a separate remedy included in his prayer for relief.

- 5 -

a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. Farmer, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." Clement v. California Dep't of Corrections, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). The indifference

1  must be substantial. The action must rise to a level of "unnecessary and wanton infliction of
2  pain." Estelle, 429 U.S. at 105.

   **A.    CCA**

4           As the court construes the FAC, Plaintiff is suing CCA, a private corporation, for
5  violation of federal rights. Claims under § 1983 may be directed at "bodies politic and
6  corporate." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 686, 688-89 (1978).
7  Under the Civil Rights Act of 1871, Congress intended municipal corporations and other local
8  government units to be included among those persons to whom § 1983 applies. Id. at 2035.
9  That proposition has been extended to corporations that act under color of state law. See
10 Sable Commc'ns of Cal. Inc. v. Pacific Tel. & Tel Co., 890 F.2d 184, 189 (9th Cir. 1989)
11 (willful joint participation of private corporation in joint activity with state or its agent taken
12 under color of state law).

13          There are four ways to find state action by a private entity for purposes of § 1983: (1)
14 the private actor performs a public function, (2) the private actor engages in joint activity with
15 a state actor, (3) a private actor is subject to governmental compulsion or coercion, or (4) there
16 is a governmental nexus with the private actor. Kirtley v. Rainey, 326 F.3d 1088, 1093 (9th
17 Cir. 2003). Under the public function test, "the function [performed by the private actor] must
18 traditionally be the exclusive prerogative of the state." Parks Sch. of Bus., Inc. v. Symington,
19 51 F.3d 1480, 1486 (9th Cir. 1995); see Kirtley, 326 F.3d at 1093; Lee v. Katz, 276 F.3d 550,
20 554-555 (9th Cir. 2002). A privately owned corporation that operates prisons pursuant to a
21 contract with a state performs a public function that is traditionally the exclusive prerogative
22 of the state. Further, to state a claim under § 1983 against a private entity performing a
23 traditional public function, a plaintiff must allege facts to support that his constitutional rights
24 were violated as a result of a policy, decision, or custom promulgated or endorsed by the
25 private entity. See Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997); Street v. Corrections
26 Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Wall v. Dion, 257 F. Supp.2d 316, 319 (D.
27 Me 2003); see also Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999); Rojas
28 v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990); Lux by Lux v. Hansen,

886 F.2d 1064, 1067 (8th Cir. 1989); Iskander v. Village of Forest Park, 690 F.2d 126, 128 (7th Cir. 1982).

CCA performs a traditional public function, i.e., operating a prison. However, Plaintiff does not allege the necessary facts against CCA to show that it promulgated or endorsed a policy or custom that resulted in a violation of his federal rights. Plaintiff instead appears to predicate liability solely on *respondeat superior*. There is no *respondeat superior* liability under § 1983, so a defendant's position as the employer of someone who allegedly violated a plaintiff's constitutional rights does not make it liable. Monell, 436 U.S. at 691; Taylor, 880 F.2d at 1045. Because Plaintiff fails to allege a section 1983 claim against CCA, such claim will be dismissed without prejudice.

**B.     Florez, Alfano, and DeLash**

Among others, Plaintiff sues three CCA employees, DeLash, Florez, and Alfano. The only facts alleged against DeLash is that he issued Plaintiff a disciplinary charge the day after Plaintiff was injured. The only facts alleged against Florez are that he reassigned Plaintiff to a lower bunk the day after Plaintiff fell and responded to Plaintiff's written requests on May 25, 2009 regarding the pain he was suffering following the septoplasty. The only mention of Alfano is Florez's statement in his June 1, 2009 response to Plaintiff that he would check with Alfano about Plaintiff's May 25, 2009 requests.

None of these facts is sufficient to state a section 1983 based claim against these three individual Defendants. While Plaintiff adequately alleges that he had a serious medical need following his fall and in connection with the subsequent surgeries, he fails to sufficiently allege facts showing that any of these Defendants acted with deliberate indifference to his serious medical needs under the Eighth Amendment. Accordingly, to the extent the FAC can be read as alleging a claim under 42 U.S.C. § 1983 against these three Defendants, such claim will be dismissed without prejudice.

**C. Cox, Crane, and Miracle**

On the other hand, Plaintiff sufficiently alleges that Defendants Cox, Miracle, and Crane acted with deliberate indifference to his serious medical needs. See Alvarez v. Hill, 518

F.3d 1151, 1157-58 (9th Cir. 2008) (liberal notice pleading requires courts to look at the facts alleged to determine the claims at issue). Although Plaintiff does not allege a discrete claim of deliberate indifference, for purposes of this screening order, he does allege facts sufficient to allow the claim of deliberate indifference to go forward. While Defendant Cox's alleged initial failure to recognize the seriousness of Plaintiff's injury amounts to no more than negligence, Plaintiff sufficiently alleges that her refusal to provide him prescribed pain medication after his surgeries, despite his repeated requests due to pain, sufficiently states an Eighth Amendment violation. In alleging that Defendant Dr. Crane endorsed Cox's substitution of ice and aspirin for prescribed pain medication following a painful procedure, Plaintiff likewise sufficiently alleges an Eighth Amendment violation as to Dr. Crane. Lastly, Plaintiff alleges that despite recognizing that x-rays were needed, Miracle failed to ensure that he was promptly x-rayed, even after the holidays had passed, for two weeks. These allegations, too, at this juncture, are sufficient to allege an Eighth Amendment violation as to defendant Miracle. Accordingly, to the extent that the FAC can be read as asserting a section 1983 claim based upon alleged indifference to serious medical needs in violation of the Eighth Amendment, the Court will require a response from Defendants Cox, Miracle, and Crane. The Court will also require a response by those three Defendants to the FAC's closely related state law claims of negligence and medical malpractice.

**IV.    State Law Claims**

Plaintiff's FAC includes a number of state-law claims against all defendants. Where a federal court has original jurisdiction over an action, such as a case asserting violations of 42 U.S.C. § 1983, the doctrine of pendent jurisdiction allows a federal court to exercise "pendent" or "supplemental" jurisdiction over closely-related state law claims. Bahrampour v. Lampert, 356 F.3d 969, 978 (9th Cir. 2004) (citing 28 U.S.C. § 1367(a)). Because Plaintiff's FAC fails to state a federal constitutional claim against CCA, Florez, Alfano and DeLash, the Court declines to exercise supplemental jurisdiction over any state law claims against these four defendants and such claims against them will be dismissed without prejudice. 28 U.S.C. § 1367(c). However, because at least at this preliminary juncture the court has found that

1  Plaintiff has sufficiently alleged an Eighth Amendment violation against Defendants Cox,
2  Crane, and Miracle, it must consider the sufficiency of the remaining state law claims alleged
3  against those Defendants.

### A. Failure to State a Claim for Intentional Infliction of Emotional Distress

Plaintiff also alleges a claim for intentional infliction of emotional distress ("IIED") against all of the Defendants. The preceding discussion obviates the need to consider the sufficiency of Plaintiff's IIED claim as alleged against Defendants CCA, FLorez, Alfano and DeLash. The court still must consider, however, the sufficiency of Plaintiff's claim of IIED with respect to the remaining defendants, Cox, Crane and Miracle.

The tort of IIED requires proof of three elements: extreme and outrageous conduct by a defendant; that the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct; and severe emotional distress resulting from a defendant's conduct. Citizen Publishing Co. v. Miller, 115 P.3d 107, 110 (Ariz. 2005)(quoting Ford v. Revlon, Inc., 734 P.2d 580, 585 (Ariz. 1987); accord Restatement (Second) of Torts § 46 (1965). To state an IIED claim, a plaintiff must allege facts to support that a defendant's actions were so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. See Mintz v. Bell Atl. Sys. Leasing Int'l, Inc., 905 P.2d at 559, 563 (Ariz. Ct. App. 1995). The conduct must fall "[a]t the very extreme edge of the spectrum of possible conduct." Watts v. Golden Age Nursing Home, 619 P.2d 1032, 1035 (1980). Whether a defendant's conduct may be regarded as extreme and outrageous is initially examined by the court as a matter of law. Restatement (Second) of Torts § 46 (1965). Plaintiff has not alleged facts which constitute extreme or outrageous conduct. Therefore, his claim of intentional infliction of emotional distress will be dismissed without prejudice as against defendants Cox, Crane and Miracle for failure to state a claim. See 28 U.S.C. § 1915A(b)(1).

### B. Failure to State a Claim for Breach of Contract

The only alleged contract in the FAC is between the Defendant CCA and the Alaska DOC. Allegedly those two entities had a "contractual relationship . . . to house Alaska's state

1 prisoners." FAC (Doc. 33) at 6[3], ¶ 21). Additionally, the FAC alleges that the remaining Defendants, Cox, Crane and Miracle are CCA employees. Id. at 4, ¶¶ 10); 11); and 12). The FAC further alleges that Plaintiff is a third party beneficiary to that contract. Id. at 6, ¶ 23). However, because "[g]enerally, an employee cannot be held liable for the breach of a contract between the employer and another third party[,]" the court finds, that the FAC fails to state a "contract claim[] against [these] individual CCA employees." See Rathke v. Corr. Corp. of America, 153 P.3d 303, 312 (Alaska 2007) (internal quotation marks, citations and footnote omitted) (affirming dismissal of breach of contract claim against individual CCA employees brought by Alaska inmate held at Florence Correctional Facility, owned and operated by CCA, and under contract with the DOC). Accordingly, Plaintiff's breach of contract claim as against Defendants Cox, Crane and Miracle is dismissed with prejudice.

**V.     Claims for Which an Answer Will be Required**

Based upon the foregoing, the Court will require a response from Defendants Cox, Miracle, and Crane to the claims of deliberate indifference, negligence, and medical malpractice in the First Amended Complaint.

**VI.    Warnings**

    **A.     Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

    **B.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this

---

[3] For ease of reference, all citations to page numbers of docketed items are to the page assigned by the court's case management and electronic case filing (CM/ECF) system.

action.

**C.   Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.   Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)   All claims against Defendants CCA, DeLash, Florez, and Alfano, and John or Jane Does are dismissed without prejudice.

(2)   The claim of intentional infliction of emotional distress against Defendants Cox, Crane and Miracle is dismissed without prejudice.

(3)   The breach of contract claim against Defendants Cox, Crane and Miracle is dismissed with prejudice.

(4)   Defendants Cox, Crane, and Miracle must answer the claims in the First Amended Complaint as to the section 1983 claim based upon deliberate indifference, and the closely related state law negligence and medical malpractice claims.

(5)   The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 33), this Order, and both summons and request for waiver forms for Defendants Cox, Crane, and Miracle.

(6)   Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a given Defendant within 120 days of the filing of the First Amended Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(8) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

> (a) personally serve copies of the Summons, the First Amended Complaint, and this Order upon such Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

> (b) within 10 days after personal service is effected, file the return of service for that Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon that Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10) **A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

1     (11)   Defendant must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

    (12)   Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

    (13)   This matter is referred to Magistrate Judge David K. Duncan pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 10th day of February, 2012.

_____
Robert C. Broomfield
Senior United States District Judge